# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                 Plaintiff,

                 v.

BRIAN D. BELAND
DENAE A. BELAND,

                 Defendants.

Case No.: 2:19-CR-00021 WBS

**DECLARATION OF GUY E. BLACK**

## DECLARATION OF GUY E. BLACK

I, GUY E. BLACK, declare and state as follows:

1.     I have been a licensed California certified public accountant since 1991, and I own and operate an accounting services firm in Gold River, California.

2.     I have represented many taxpayers before the Internal Revenue Service ("IRS") for various tax issues, including income tax examinations.

3.     On or about November 13, 2014, Brian and Denae Beland retained me to represent them before the IRS with respect to their pending income tax examination for tax year 2012.

4.     Like other civil audits that I work on, I planned to appear for meetings, provide documents, review deductions, and answer questions. I viewed this audit as a normal civil audit.

5.     Had I thought the civil fraud penalty was likely at issue, I would have referred my clients to an attorney.

6.     Revenue Agent ("RA") Raymond sent me a letter with a copy of Information Document Request No. 1, which requested books and records, bank statements, and other information and documents relating to the 2012 income tax return.

7.    On or about November 13, 2014, I asked RA Raymond to reschedule the initial audit meeting, which was set for December 10, 2014, for a few weeks to allow me time to prepare for the initial meeting and review the large amount of documentary evidence requested.

8.    I informed RA Raymond that Denae was experiencing medical issues. Denae was in the first trimester of a high risk pregnancy, and she also had several anxiety disorders which could have resulted in stress and potential harm to her unborn baby.  I provided RA Raymond with doctors' notes regarding these medical issues.

9.    RA Raymond refused to extend the initial meeting.  I asked her for a written response as to why this request was denied and why the IRS ignored the doctors' notes, but she never provided a response.

10.    I told RA Raymond that while I did not have adequate time to prepare for the initial meeting, I would still appear at the meeting to answer any questions to the best of my knowledge and to provide any documentation that was available at that time.

11.    I met RA Raymond and Group Manager ("GM") Pardo for the initial meeting on December 10, 2014.

12.    The meeting felt like an interrogation.  In all of my years of practice, I have never seen an audit become so hostile so quickly.  All of my meetings and discussions with RA Raymond and GM Pardo were hostile.  In my experience, it is highly unusual for a group manager to attend a routine audit appointment.

13.    During the initial meeting, GM Pardo brought up "Circular 230."  Circular 230 is a federal regulation that governs the practice of certain professional representatives, including CPAs, before the IRS.

14.    It is commonly known among tax professionals that IRS agents sometimes bring up "Circular 230" improperly as a way to intimidate tax representatives.  Tax representatives can face sanctions like penalties or suspension from practice if they violate Circular 230.

15.     My impression in this initial interview was that GM Pardo brought up Circular 230 as a way to intimidate me because he indicated I might be in violation of Circular 230 by not being properly prepared for the meeting.

16.     During the meeting, we discussed the tax issues under examination, including the business expense deductions claimed on Brian and Denae's tax returns.

17.     It was absolutely clear to me at the initial meeting that the IRS had already made up its mind to disallow the business expense deductions.

18.     At the end of the initial meeting, we set up a second meeting for January 2015.

19.     On December 11, 2014, RA Raymond issued Information Document Request Nos. 3 and 4, and expanded the audit to tax years 2011 and 2013.

20.     Sometimes I appear for my clients at IRS appointments so they do not have to take time off of work, and so I had planned on doing that for the second meeting. However, after we scheduled the second meeting, RA Raymond called me and told me that Brian had to appear personally.

21.     I appeared at the second meeting with Brian and Denae in January 2015.

22.     GM Pardo was not at this meeting, but GM Andrew Drysdale was there, possibly as an acting manager or supervising revenue agent.

23.     Like the first meeting, it was obvious to me from the IRS statements and behavior that the IRS had already made up its mind and would disallow the business expense deductions.

24.     During this meeting, RA Raymond provided a statute of limitations extension (IRS Form 872) for tax year 2011, and said that if we did not sign the Form 872, the taxpayers would not have appeal rights.  RA Raymond also said that even if Brian and Denae were to appeal the case, no new information would be considered in such an appeal.  My impression was that RA Raymond was saying these things to pressure Brian and Denae to sign the Form 872 for tax year 2011.

1    25.    At the conclusion of the meeting, RA Raymond indicated that we would
2  have until February 27, 2015, to provide documents.  However, she sent a letter a few
3  days later on January 23, 2015, stating that Brian and Denae only had until February 6,
4  2015, to provide the requested documents.

5    26.    After going through the first and second meetings, and after receiving RA
6  Raymond's January 23 letter shortening the time to respond, I became concerned that the
7  IRS was becoming overly aggressive.

8    27.    On February 4, 2015, pursuant to the Taxpayer Bill of Rights, I wrote a
9  letter to RA Raymond asking for a list of all third parties with whom she had been in
10 contact.

11   28.    On February 27, 2015, an IRS Technical Service representative "A.
12 Suhajda" sent me a letter stating that the IRS had only been in contact with "New
13 Dimensions, Inc."  It was my understanding that New Dimensions was a property
14 management company for Brian and Denae's rental property.

15   29.    I have now become aware that the IRS had also been in contact with CPA
16 Terrie Prod'hon, whom Denae had previously contacted to determine whether to engage
17 CPA Prod'hon to represent Brian and Denae in the audit.

18   30.    Had the IRS informed me in the February 27 letter that RA Raymond or
19 one of the group managers had spoken with CPA Prod'hon, I would have advised Brian
20 and Denae that the IRS had likely received confidential and privileged information about
21 their tax returns, and I would have referred them to an attorney.  I previously had a
22 business partner who was an attorney, so over the years I have become sensitive to
23 situations where an attorney should be consulted or engaged.

24   31.    However, because the IRS informed me that the only third party the audit
25 team had contacted was New Dimensions, I did not advise them to retain an attorney, and
26 I still viewed the case as a normal civil tax audit despite the IRS's hostile behavior.

27   32.    On June 4, 2015, RA Raymond and GM Pardo came to Brian and Denae's
28 house and served them with summonses to appear for an interview just a few days after

- 4 -

1   Denae's scheduled due date.  The IRS knew that Denae's due date was June 24, 2015, so
2   I considered the timing of both the personal service of the summons and the summons
3   interview date to be highly inappropriate.

4       33.   I was not aware that the IRS Criminal Investigation Division ("CI") had
5   already become involved at this stage.  I did not know that a CI Special Agent or Special
6   Agents had instructed RA Raymond and GM Pardo to serve the summonses in order to
7   get certain testimony from Brian and Denae.

8       34.   It was my understanding at the time that the IRS was required to inform
9   taxpayers if an audit had become a criminal investigation.  Had I known that CI was
10  involved, I would have instructed Brian and Denae to hire an attorney.

11      35.   After the IRS served the summonses on Brian and Denae, I considered the
12  IRS's behavior to be unacceptable and so I sent a letter to United States Senator Dianne
13  Feinstein to elevate my concerns about the mistreatment of Brian and Denae.  This letter
14  was forwarded to the IRS Taxpayer Advocate Service, but none of my concerns were
15  ever addressed.  The Taxpayer Advocate Service did not inform me that RA Raymond
16  had been working with CI.

17      36.   I sent a letter to RA Raymond on June 23, 2015, to let her know that Brian
18  and Denae could not meet for the summons interview because Denae had just given birth.

19      37.   On June 26, 2015, GM Pardo called me and said he would be issuing an
20  audit report disallowing Brian and Denae's business expense deductions if they did not
21  agree to a statute extension (Form 872) for tax year 2011.  A true and correct
22  transcription of a voicemail that GM Pardo left for me is attached to this declaration as
23  **Exhibit A**.  I considered this as another effort by the IRS to try to force Brian and Denae
24  to sign the statute extension.

25      38.   Throughout the audit, the IRS called me several times and asked me to get
26  Brian and Denae to sign a statute extension (Form 872) for tax year 2011.  RA Raymond
27  asked Brian and Denae to sign a Form 872 both times they appeared.

28

39. Because it is their right not to agree to a statute extension, and because of the hostile behavior of RA Raymond and GM Pardo, Brian and Denae did not sign the Form 872.

40. On July 27, 2015, IRS Counsel attorney Kelly Blaine sent letters to Brian and Denae stating that if they did not appear in response to the summonses on August 19, 2015, they would bring legal proceedings against them in the United States District Court.

41. I appeared at the summons interview with Brian and Denae on August 19, 2015.

42. Like the first two meetings, this meeting was hostile. This time the IRS had not only GM Pardo and RA Raymond in attendance, but also Special Enforcement Program ("SEP") GM John Yu. The SEP group usually handles cases involving fraud issues.

43. My impression at this meeting, like the first two meetings, was that the IRS had already made up its mind to disallow the business expense deductions. At the end of this meeting, the IRS gave Brian and Denae the audit report, which RA Raymond had prepared before the meeting. It seemed to me that the summons interview was unnecessary if the IRS had already made up its mind about the tax and fraud penalty for 2011.

44. Again during this meeting, RA Raymond said that if Brian and Denae did not sign the statute extension (Form 872), they would not have appeal rights.

45. In my 30 years of practice, I have never seen an audit go like this.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Gold River, California on February 24, 2022.

_____
Guy E. Black

1

2

3

4

**EXHIBIT A**

**TRANSCRIPTION OF VOICEMAIL**

**FROM IRS GABRIEL PARDO TO GUY BLACK**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Hi, good afternoon, this is a message for Guy Black.  This is Gabriel Pardo, IRS, Internal Revenue Service, at 916.974.5019.  Guy, I've noticed that we've had several faxes here, you are going through Ivana.  I just received one of your responses where you are saying that you want it in writing.  However, at this point we don't know . . .  we'd like to have a conversation first of all and determine what is a mutual date for you as far as the month of August.  However, the other issue that we do have is that we have not had a written response from you or your client regarding the consent to extend.  So at this point for us that is important and I am sure it is important for you as well.  If we don't hear from you and we haven't really determined what is a good mutual date, I think at this point I am going to have to request from the agent to send out the revenue agent report and is going to be basically a disallowance of the expenditures and whatever other issues are there.  So that may be one of our avenues at this point since we really are lacking communication.  At any rate, it would be good and also advantageous of you to please give us a call so we can have a conversation.  My number again, 916.974.5019.  If we don't hear from you today then Monday.  However, early next week we will be considering issuing the revenue agent report.  Talk to you later.  Thank you very much.  Bye, bye.

26

27

28

Received Friday, June 26, 2015, at 2:50 p.m.

EXHIBIT A – DECLARATION OF GUY E. BLACK